FULMER, Acting Chief Judge,
Dissenting.
I respectfully dissent because I conclude that the records at issue in this dispute are judicial records that are subject to public disclosure. Through their petition for writ of mandamus, petitioners seek access to two categories of records, which they refer to as the “Judge Ward Records” and the “Fraternization Records.” Petitioners’ request for the Judge Ward Records is directed to judicial records made or received by the Chief Judge, his staff, the Court Administrator of the Thirteenth Judicial Circuit, his staff, or Court Communications & Technology Services personnel relating to alleged misconduct by Judge Edward H. Ward of the Thirteenth Judicial Circuit. The request for the Fraternization Records is directed to judicial records made or received by the Chief Judge, his staff, the Court Administrator, or his staff concerning fraternization, romantic relationships, or sexual contact between any Thirteenth Judicial Circuit judge and courthouse personnel. Petitioners assert that these requests encompass judicial records subject to public disclosure pursuant to article I, section 24 of the Florida Constitution[2] and Florida Rule of Judicial Administration 2.051. I agree and, therefore, would grant the petition.
I am confident that my colleagues in the majority fully subscribe to Florida’s strong *637 policy in favor of open government and to the view that records generated while courts are acting in an administrative capacity should be subject to the same standards that govern similar records of other branches of government. My disagreement with the majority simply concerns the legal interpretation and application of certain rules implementing Florida’s constitutional mandate that the public has a right of access to certain records made in the course of the official business of Florida’s courts.
The majority begins with a review of the definition of judicial record and concludes that “by and large, none of the documents requested by petitioners is a ‘judicial record’ as defined in the rule because they were not received by Judge Alvarez in the transaction of official business.” This conclusion, in turn, is premised on the reasoning that the duties of a chief judge, as enumerated by article V, section 2(d) of the Florida Constitution and Florida Rule of Judicial Administration 2.050, do not include the duty to investigate judicial misconduct of any kind. Thus, the majority seems to define judicial records as only those records generated by an official in carrying out a duty specifically enumerated by rule, law or ordinance. In doing so, the majority construes the public record provisions too narrowly. The administrative responsibilities of a chief judge are not so rigid as to enable this court to predetermine exactly what documents could have been generated by him in all transactions of official business. Furthermore, the majority’s conclusion ignores the facts established in this record, which are that Judge Alvarez in his capacity as the Chief Judge of the Thirteenth Judicial Circuit did make and receive records while investigating alleged misconduct.[3]
I recognize that a chief judge is not the “boss” of the other judges, each of whom hold the same constitutional officer status as the chief judge. However, pursuant to article V, section 2(d) of the Florida Constitution, the chief judge is “responsible for the administrative supervision of the circuit courts and county courts in his circuit.” It is my view that any action taken by a chief judge that relates to the day-today functioning of the courts constitutes the transaction of official business, whether or not the action taken is expressly listed as a duty in Florida Rule of Judicial Administration 2.050. For example, if a chief judge engaged in negotiations and correspondence regarding the lease of branch courthouse facilities, I assume the majority would agree that any resulting email communication or other documentation would be subject to public disclosure because the chief judge would be carrying out an administrative activity in his capacity as the chief judge. However, the enumerated duties of a chief judge do not include the procurement of leases for courthouse facilities.
The majority next discusses the application of canon 3(D) of the Code of Judicial Conduct to render some of the requested items a judicial record and the interplay with the exemption provision of Florida Rule of Judicial Administration 2.051(c)(3)(A) as to some of those items. I agree with petitioners’ argument that rule *638 2.051(c)(3)(A) has no application in this case because this rule addresses “[c]om-plaints alleging misconduct against judges, until probable cause is established.” Nowhere in the record before us did Judge Alvarez ever assert that he received a formal complaint about Judge Ward. In fact, in response to petitioners’ October 1999 public records request, Judge Alvarez stated that “I do not have custody of, nor am I aware of, any ‘complaints of sexual harassment and/or sexually inappropriate comments or behavior made against Hills-borough Circuit Judge Edward Ward.’ ” Moreover, there was no formal complaint made against Judge Ward by any alleged victim contained in the records released by the Judicial Qualifications Commission. On the contrary, the alleged victims filed affidavits stating that they did not wish to file a complaint. Nevertheless, I will not belabor this point because the majority does not rest its conclusion on the application of rule 2.051(c)(3)(A). Instead, the majority ultimately relies on an exemption that it concludes applies to all judicial records that might be included in the petitioners’ request.
The majority contends that any review that Judge Alvarez did undertake regarding Judge Ward or anyone else would fall within the confidentiality provisions of the work-related civil rights complaint procedures adopted by the supreme court. I agree that complaints made and materials developed through the use of these procedures may be confidential. However, as recognized by the majority, there is nothing in the record to suggest that the civil rights complaint procedures were invoked by anyone at any time. The majority finds this fact to be of no moment. I find it to be of great moment because I believe the confidentiality provisions of the civil rights complaint procedures only apply when those procedures are, in fact, being utilized. Furthermore, I do not understand the majority’s fears that the intended beneficiaries of the confidentiality provisions will be betrayed if we order the records at issue to be disclosed. In this case, those persons who could be protected by the confidentiality provisions have expressly stated that they do not wish to initiate any complaints. Their decision not to invoke the complaint procedures in no way affects the rights of those who do invoke the procedures to receive the protections afforded by the confidentiality provisions.
I decline to address some of the arguments of the parties that are directed specifically to the Fraternization Records because they are not specifically addressed in the majority opinion. However, I wish to express my disagreement with respondent’s position that “fraternization, romantic relationships or sexual contact” are not part of any court’s official business and, therefore, there is no public right of access to materials or e-mails concerning such activity. Judge Alvarez undertook an investigation of these activities in his capacity as chief judge and it is this fact that renders the records he generated or received to be judicial records subject to disclosure.
For the reasons expressed in this dissent, I am of the view that Judge Alvarez had a clear legal duty to grant petitioners’ record request or, at a minimum, to seek an in camera inspection proceeding in which claimed exemptions could be considered. A failure to produce these records violates both the letter and the spirit of the Florida Constitution and rule 2.051. I would grant the petition for writ of mandamus.

. Article I, section 24(a) of the Florida Constitution provides, in part:
Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government. ...

. Judge Alvarez indicated that such records existed in responding to requests on March 6, 2000, wherein he wrote that “any records in my custody pertaining to your request have already been furnished to the Florida Judicial Qualifications Commission (JQC) pursuant to its request.” Moreover, in his response to the petition, counsel for Judge Alvarez argues that at least part of petitioners' current request for materials is moot because the JQC's disclosure to the public included affidavits and documents “created in Respondent’s administrative review of the matter."